---

SCHMERTZ WIRE GLASS CO. et al. v. CONTINUOUS GLASS PRESS CO.

(District Court, W. D. Pennsylvania. August 25, 1914.)

No. 28.

STIPULATIONS (§ 18*)—EFFECT.

    Where, in a suit for infringement of patent on a wire glass manufacturing machine, it was stipulated, for the purpose of determining complainants' profits, that the cost to complainants of producing half-inch wire glass was the same as that of defendant, to wit, 15 cents per square foot, and the cost of grinding and polishing 18.79 cents per square foot, such stipulation, until withdrawn, was conclusive; and it was error, because of certain evidence introduced before the master, to find that the cost to complainants to manufacture such wire glass was 40 cents per square foot, and to determine the damages on that basis.

    [Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 41–54; Dec. Dig. § 18.*]

In Equity. Suit by the Schmertz Wire Glass Company and another against the Continuous Glass Press Company for violation of patent. On exceptions to master's report. Sustained in part.

Arthur J. Baldwin and Drury W. Cooper, both of New York City, for plaintiffs.

Augustus B. Stoughton, of Philadelphia, Pa., and Ward & Gray, of Wilmington, Del., for defendant.

BUFFINGTON, Circuit Judge. In this case Henry B. Robb, then clerk of the Circuit Court for the Eastern district, was, by agreement of the parties, appointed master to state an account, and on his death the work was continued and the accounting completed by George Brodbeck, deputy clerk. Turning first to the exceptions filed by the plaintiff, we note that in his report the master awarded complainants as damages all their loss of profits caused by defendant's sale of wire glass made on the infringing machine. This sum, viz., $13,564.85, the master arrived at by taking the difference between the fixed selling price obtained for such glass by complainant during the infringing period and deducting therefrom complainants' cost of manufacture. This cost price was fixed by stipulation as follows:

"It is stipulated between the parties that, for the purposes of this accounting, the cost to the complainant of producing one-half inch wire glass is the same as that of the defendant, namely, 15 cents per square foot, and the cost of grinding and polishing is the same as that of the defendant, namely, 18.79 cents per square foot. This cost is the cost of producing stock sheets, and takes no account of loss resulting from cutting to size."

The master, instead of following this stipulation, and basing such allowance to the defendant at 33.79 cents, allowed it 40 cents, per square foot, making a difference of $2,247.95. The plaintiff objects to such allowance by its first and second exceptions, which are:

"(1) That the master found that the cost to complainants of manufacturing polished wire glass was 40 cents per square foot, whereas the master should have found and reported that such cost was 33.79 cents per square foot.

"(2) That the master found that the total damages to the complainants from the infringement amounted to $13,564.85, whereas he should have found that the total damages to the complainants from the infringement amounted to $15,812.81."

The ground of this departure by the master from the stipulation was that in the examination of one of plaintiff's witnesses it was shown that the Schmertz Wire Glass Company did not manufacture any glass, but was a patent holding company. The Mississippi Wire Glass Company, the other complainant, was a selling company only, and the Mississippi Glass Company, a subsidiary company, was the manufacturing company for the complainants. In the accounts between the complainants and their subsidiary, the amount paid for such wire glass to the latter by the former was 40 cents per square foot. The master accordingly reported:

"The master finds that the cost to plaintiff of manufacture is 40 cents, since this is what the plaintiff pays the subsidiary company, and plaintiff is not entitled to the profit of the subsidiary company, the Mississippi Glass Company, in this accounting."

We fail to see any justification for this view. The purpose of the stipulation was to fix facts. The stipulation that, "for the purposes of this accounting, the cost to the complainant of producing one-half inch wire glass is the same as that of the defendant, namely, 15 cents per square foot, and the cost of grinding and polishing is the same as that of the defendant, namely, 18.79 cents per square foot," accepted the defendant's cost of manufacture and made it the basis of this accounting. Until that stipulation was withdrawn, it remained the ascertained and fixed basis of accounting. We accordingly sustain these exceptions, and find the charge should be $15,812.81, instead of $13,546.86, found by the master.

The third exception is:

"That the master found 'the case is not such an aggravated case of willful and malicious infringement as would seem to be required for multiplication of damages,' whereas he should have found and reported that under the circumstances of the willful and flagrant character of the infringement complainants are entitled to treble damages under the Revised Statutes, sections 4919 and 4921."

After argument and due consideration we are of opinion the master is not shown to have committed error in his action in this respect. The exception is therefore dismissed.

We turn next to the defendant's exception, not in effect heretofore disposed of, which is:

"(1) Exception is taken to the master's ruling converting the admittedly correct account of defendant's operations, including inventory at cost and

showing the total amount received less inventory to be $25,370.62, and total amount spent $26,085.99, from an actual loss of $715.37, into an estimated profit of $8,550.72, by adding to the inventory, or charging defendant, at cost, with part of the glass made and not sold, and not in inventory, and left after the part sold had been picked from all that was made, for two reasons: First, because in the way that defendant's business was actually conducted there was no profit to it from this glass so made and not sold or otherwise profitably disposed of; and, second, because there is no evidence that this glass realized cost, or any other price, the evidence being that it was not sold, and realized nothing, and is not in inventory or in existence."

In disposing of it we note that the defendant filed a statement with the master showing there was made by the defendant of the polished infringing glass 57,318 feet. From this there was deducted as worthless or cullett 12,232 feet, leaving a balance of 45,086 feet to be accounted for. Of this latter amount 36,200 feet were sold, and therefrom was realized $25,370.62. As against this sum the defendant contends there should be charged $26,085, being the cost of producing the whole 57,318 feet. In our view this contention cannot be sustained. Assuming the very unsatisfactory proof that 12,232 feet of this glass was worthless or cullett, and that no proportionate part of the $26,085 should be charged to it, we are clear that there is no warrant for not charging a due proportion of such cost of $26,085 to the 8,886 feet of glass remaining on hand. In other words, we think that approximately $36/45$ of the total cost of $26,085, or $20,868, should be apportioned to the 36,200 feet sold. If this is done, it will be seen that the difference between the amount realized, viz., $25,370.62, and the proper proportionate cost, viz., $20,868, that is, $4,502.62, is the profit with which the defendant should be charged for the glass sold. If, in addition to this, the 12,232 feet of glass, which the defendant's own statement concedes was polished, is to enter into the account, and the proper proportion of cost chargeable to the glass sold is $26/57$, instead of $36/45$, the master would have been warranted in finding that the share of expense of producing the $25,370 glass sold was approximately $12,-000, showing a profit of approximately $13,000 on the glass sold. In view of the large size of this item of unaccounted for glass, and the vague testimony as to its disappearance, we feel that the master more likely erred in favor of, than against, the exceptant. We are satisfied that no injustice is done to the exceptant by dismissing the exception complained of.

A decree drawn in accordance with these holdings may be prepared for entry.